UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TAMIKO JOHNSON,

                           Plaintiff

-vs-

COMMISSIONER OF SOCIAL
SECURITY,

                           Defendant.

_____

DECISION AND ORDER

1:19-CV-0706 CJS

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

which denied the application of Tamiko Johnson for Social Security Disability Insurance

("SSDI") benefits and Supplemental Security Income ("SSI") benefits.   Now before the

Court is Plaintiff's motion (ECF No. 10) for judgment on the pleadings and Defendant's

cross-motion (ECF No. 13) for the same relief.   For the reasons discussed below,

Plaintiff's application is denied, Defendant's application is granted, and this action is

dismissed.

STANDARDS OF LAW

The Commissioner decides applications for SSDI and SSI benefits using a five-step

sequential evaluation:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20
> C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether
> the claimant is currently engaged in substantial gainful activity. If he is not,
> the Commissioner next considers whether the claimant has a severe
> impairment which significantly limits his physical or mental ability to do basic
> work activities. If the claimant suffers such an impairment, the third inquiry is

1

whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment]. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.[1] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted)

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.")

---

[1] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

(citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

> The substantial evidence standard is a very deferential standard of review— even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered. *Id.*

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See,*

*Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action.   The Court will refer to the record only as necessary for purposes of this Decision and Order.

Plaintiff claims to have become disabled on January 1, 2011, due to a combination of mental and physical impairments.    On August 28, 2018, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled at any time between January 1, 2011, and the date of the decision.[2]   Applying the familiar five-step sequential evaluation set forth earlier, the ALJ found that: Plaintiff had not engaged in substantial gainful activity since the alleged onset date; Plaintiff had severe impairments consisting of PTSD, major depressive order, ongoing poly-substance abuse, asthma, degenerative spondylosis and post-cervical fusion surgery; Plaintiff's impairments did not meet or medically equal a listed impairment; Plaintiff had the RFC to perform work at the medium exertional level provided that it involved "simple and routine tasks and a low stress

---

[2] The ALJ, the Hon. Hortensia Haaversen, issued her decision following a hearing at which Plaintiff appeared with an attorney, and at which both Plaintiff and a vocational expert ("VE") testified.

environment defined as no more than occasional contact with coworkers, supervisors and no contact with the public and only occasional decisionmaking"; Plaintiff was not able to perform her past relevant work; but considering Plaintiff's age, education, work experience and RFC, there were other jobs that Plaintiff could perform.

Plaintiff contends that the ALJ's determination must be reversed because it contains legal error and is not supported by substantial evidence, particularly in regard to the ALJ's RFC determination, that is, the ALJ's evaluation of the medical evidence and her findings regarding the limiting effects of Plaintiff's physical and mental impairments on her ability to work.[3]   On this point, Plaintiff cites *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) for the proposition that "[w]here evidence has not been properly evaluated because of an erroneous view of the law," "the determination of the Commissioner will not be upheld."

With regard to mental impairments, Plaintiff maintains that the ALJ "failed to consider Plaintiff's complete medical history," and instead improperly focused on just a few reports, spread out over several years, which did not provide a complete picture of her condition and which therefore leaves the ALJ's finding, that Plaintiff's mental health symptoms were controlled with medication and therapy, unsupported by substantial evidence.   In pertinent part, Plaintiff states:

> The ALJ in this matter claimed that the record indicated Plaintiff's mental symptoms had remain controlled with conservative treatment since February 2012.  . . .   The ALJ's brief analysis of Plaintiff's complex mental health history and evidence renders her decision and RFC unsupported by substantial evidence.  . . .   The ALJ oversimplified the degree of

---

[3] Plaintiff asserts that there are two "issues presented for review" in this action: "1. Was the ALJ's evaluation of Plaintiff's mental impairments based on substantial evidence as she failed to consider Plaintiff's complete medical history?   2. Was the ALJ's evaluation of Plaintiff's physical impairments and limitations post cervical fusion based on substantial evidence, especially given changes after a motor vehicle accident?" Pl.Memo of Law, ECF No. 10-1 at p. 1.

interference caused by Plaintiff's impairments.  . . .  The ALJ's assertion
Plaintiff's mental health has been 'controlled' and that Plaintiff interacted well
with personal relationships is not supported by evidentiary support.  . . .  At
issue is whether the ALJ's citation to only three treatment notes is substantial
enough to support her RFC.

Pl. Memo of Law, ECF No. 10-1 at pp. 17-18.[4]

Plaintiff also asserts that the ALJ erroneously failed to accept the consulting

psychologist's opinion that Plaintiff had "marked" limitations in relating to others and

dealing with stress, finding instead that Plaintiff had only "moderate" limitations in those

areas. *See*, Pl. Memo of Law, ECF No. 10-1 at p. 18 ("Despite the only medical opinion

finding 'marked' limitations with Plaintiff's ability to relate with others and appropriately deal

with stress, the ALJ found Plaintiff's ability to interact with her boyfriend, children and

perform some daily activities as support [for] only 'moderate' limitations.").   Plaintiff

maintains that before the ALJ could reject that aspect of the consulting psychologist's

report, the ALJ was required to "consider the evaluating factors," which she did not do.

Plaintiff also contends that the ALJ's assertion that the record as a whole supported a

finding of only moderate limitations (with regard to handling stress and interacting with

others) "grossly mischaracterized" the evidence.   Indeed, Plaintiff contends that "[t]here is

no substantial evidence to support the ALJ's finding that Plaintiff can appropriately and on

a sustained basis interact with supervisors and coworkers on an occasional basis."

Along this same line, Plaintiff also contends that it was not sufficient for the ALJ to

---

[4]  *See, also, id.* at p. 20 ("Plaintiff's clinical evidence since March 2012 does not demonstrate Plaintiff's
symptoms were controlled with treatment given her persisting report of symptoms, clinical presentation,
struggles with self-care and suicidal thoughts and gestures.   Most concerning, the ALJ did not discuss any
psychiatric evidence after April 2015, despite Plaintiff's continued involvement in treatment and persisting
presentation of clinical symptoms.").

account for Plaintiff's moderate limitation in dealing with stress merely by limiting Plaintiff to simple work.   Rather, Plaintiff maintains that the ALJ erred by failing to make specific findings about "the nature of [Plaintiff's] stress" and "the circumstances that trigger it," and how those factors affect her ability to work.

With regard to physical impairments, Plaintiff similarly maintains that the ALJ failed to consider the entire medical record, and therefore overlooked the fact that Plaintiff's condition worsened following a motor vehicle accident ("MVA") on August 30, 2016,[5]  five years after the alleged disability onset date.   On this point, Plaintiff states:

> The ALJ claimed that after Plaintiff's July 2016 cervical fusion her physical impairments 'remained controlled' with conservative treatment measures and there was no objective evidence that Plaintiff reported any exacerbations of her physical impairments since her surgery.   Evidence refutes this assertion.

Pl. Memo of Law, ECF No. 10-1 at p. 26.[6]   Indeed, Plaintiff asserts that the ALJ "ignored" evidence concerning Plaintiff's post-surgery MVA.   Plaintiff also asserts that the ALJ improperly relied on a report from a one-time consultative medical evaluation, that was "stale" insofar as the evaluation was performed prior to Plaintiff's neck surgery and MVA, and before a treating doctor opined that Plaintiff should not lift more than five pounds.[7]

The Commissioner disputes all of Plaintiff's contentions and maintains that the ALJ's decision is free of legal error and supported by substantial evidence.

---

[5]  Pl. Memo of Law, ECF No. 10-1 at p. 14.

[6]  *See also, id.* at p. 27 ("While some of Plaintiff's symptoms decreased after her July 2016 neck fusion, such as her left arm radiculopathy, she continued well past surgery to complain of and receive treatment for headaches, neck pain and developed body pain.   Further, Plaintiff's involvement in a motor vehicle accident clearly appeared to exacerbate her condition[.]").

[7]  As will be discussed further below, that lifting restriction was only temporary.

DISCUSSION

The ALJ Did Not Ignore Evidence Favorable to Plaintiff

Plaintiff maintains that the ALJ "ignored" and/or "failed to consider" various aspects of the medical record that were helpful to Plaintiff's claim. In particular, Plaintiff contends that the ALJ failed to consider the entire mental health treatment record, which caused the ALJ to incorrectly find that Plaintiff's mental symptoms remained controlled with conservative treatment from February 2012 onward, and that the ALJ similarly failed to consider the entire medical record, which caused the ALJ to incorrectly find that Plaintiff's physical impairments remained controlled with conservative measures following Plaintiff's cervical spine surgery in July 2016.

If it were true that the ALJ ignored or overlooked evidence, the ALJ would have erred, since it is well settled that "[i]n assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain." *Woodmancy v. Colvin*, 577 F. App'x 72, 75, n. 2 (2d Cir. 2014) (citing 20 C.F.R. § 416.945(a)(3)).   However, it is also well settled that

> [a]n ALJ does not have to state on the record every reason justifying a decision.   Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted.   An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012).

Here, the Court finds that the ALJ considered the entire record, concerning Plaintiff's physical impairments and mental impairments, even if she did not cite or discuss every piece of evidence mentioned in Plaintiff's submissions to the Court.   To begin with,

8

the ALJ expressly stated that she considered "all the evidence" and "the entire record."[8]

Furthermore, the ALJ's discussion of the evidence confirms that she did so, since it

specifically references much if not all of the same evidence that Plaintiff claims was

overlooked.   For example, the ALJ refers to Plaintiff's persistent tearfulness during office

visits with her mental health therapists, as well as her continuous complaints of

depression, flashbacks, anxiety and panic attacks.   Similarly, the ALJ refers to Plaintiff's

complaints of increased physical pain in 2017, after her cervical spine surgery. Although

the ALJ does not specifically discuss Plaintiff's post-surgery MVA,[9]  she cites medical

records in which the MVA is referenced.[10]  Consequently, Plaintiff's primary argument in

this action, that the ALJ ignored favorable evidence, lacks merit.

<u>The RFC Determination is Supported by Substantial Evidence</u>

Plaintiff nevertheless contends that the ALJ's finding that she remained able to work

despite her mental and physical impairments is unsupported by substantial evidence.   In

particular, Plaintiff asserts that two of the ALJ's findings, that Plaintiff's mental health

condition remained controlled with medication and therapy, and that Plaintiff's physical

condition remained essentially the same after her cervical spine surgery, are belied by the

record.   The Court disagrees,and finds that the ALJ's determinations are supported by

substantial evidence.

*Mental Health Limitations*

Plaintiff contends that there is no substantial evidence to support the ALJ's view that

---

[8]  Administrative Transcript at pp. 14, 15, 23.
[9]  The MVA does not appear to have been very serious in any event, as Plaintiff did not immediately seek medical attention.
[10]  Administrative Transcript at pp. 734-735, Ex. 8F.

Plaintiff's mental health symptoms were "controlled" with medication and therapy.   As to

this point, Plaintiff's mental health records indicate that when Plaintiff attended her mental

health appointments,[11] she consistently arrived appearing tearful, angry, depressed and

distraught about of litany of situational life stressors, including her unemployment and lack

of funds; her dissatisfaction with her living arrangements; her abusive and violent

relationships with male companions and her resulting physical injuries (lacerations, teeth

knocked out, etc.); and her dysfunctional relationships with her young adult sons.[12]

Plaintiff consistently told her mental health treatment providers that she suffered from

debilitating depression, anxiety and PTSD as a result of these conditions, and her mental

status examinations frequently referenced these complaints.[13]   Plaintiff also made multiple

suicidal gestures, purportedly because she was upset over her relationships with her

boyfriend and with one of her sons, though she immediately expressed remorse and

denied suicidality.[14]   Based on such evidence, Plaintiff contends that her mental health

symptoms were not controlled and that the ALJ's contrary finding is unsupported by

substantial evidence.

However, as the ALJ noted, despite Plaintiff's distraught demeanor and subjective

complaints during these office visits, her mental status examinations were frequently

otherwise unremarkable.[15]   For example, Plaintiff's mental status was rated as essentially

---

[11] Plaintiff was discharged from treatment multiple times due to missed appointments.

[12] See, e.g., Administrative Transcript at pp. 758-759 (Plaintiff upset at not being able to see boyfriend, due to issuance of protective order after boyfriend assaulted Plaintiff's son, who is disrespectful to Plaintiff).

[13] Plaintiff also admitted to "self medicating" with alcohol and street drugs, to deal with the stressors mentioned earlier; in that regard, Plaintiff admitted to frequent if not daily use of marijuana, and, while she claimed not to have used cocaine intentionally, toxicology screening also revealed her use of cocaine and PCP, which resulted in one of her treating doctors refusing to provide her with narcotic pain medication.

[14] See, e.g., Administrative Transcript at p. 743 ("Apparently despondent over home issues."), 750-51.

[15] See, e.g., Administrative Transcript at p. 804; see also, id. at p. 815 ("No anxiety, no depression.").

normal even immediately following a purported suicide attempt on one occasion, and after being attacked by an ex-boyfriend on a different occasion.[16]   Furthermore, during this same period, on multiple occasions Plaintiff reportedly told medical providers, who were treating her for physical conditions unrelated to her mental health, that she was *not* experiencing mental health symptoms such as depression or anxiety, and mental status examinations by those providers were consistently normal.[17]   Additionally, while Plaintiff claimed to find it difficult to be around other people, she lived with a boyfriend and at least one of her sons throughout the relevant period, and she admitted that she was able to spend a significant amount of time with other family members when she chose to do so, such as when her brother was dying from a terminal illness.[18] Moreover, the consultative psychologist indicated that despite Plaintiff's problems she was still capable of performing simple tasks, maintaining a regular schedule, relating adequately with others and dealing appropriately with stress.   Consequently, there was substantial evidence to support the mental component of the ALJ's RFC finding.

*Physical Limitations*

As for whether Plaintiff's physical condition worsened after her successful cervical spine surgery, Plaintiff maintains that shortly after her surgery she was involved in an MVA and subsequently began to complain of increased pain, which caused her treating doctor to limit her to lifting no more than five pounds.

---

[16] Administrative Transcript at p. 751, 778.
[17] See, e.g., Administrative Transcript at pp. 708, 715, 720, 723, 724 ("Psychiatric no depression, no anxiety, no panic attacks, no frequent mood swings"; "Psychiatric speech clear, cognition intact, good eye contact, though process linear and goal directed."); 736-737 ("she feels much more stable now, no frequent mood swings").
[18] Administrative Transcript at p.757.

However, as the ALJ noted, records relating to Plaintiff's physical complaints indicate normal findings and a lack of functional limitation, even after the MVA.[19]   For example, on February 23, 2017, an office note indicates that apart from some tenderness along Plaintiff's spine, physical examination revealed essentially normal results, including full strength and intact range of movement.[20]   Moreover, while Plaintiff's doctor imposed a five-pound lifting restriction in response to Plaintiff's complaints of pain, it was only a temporary 3-month restriction,[21] and later evidence indicated that Plaintiff was "well appearing" and "in no apparent distress," with intact range of motion and full strength.[22] For these reasons, the Court concludes that the challenged finding is supported by substantial evidence.

> The ALJ Did Not Improperly Disregard the Consultative
> Psychologist's Opinion

Plaintiff also alleges that the ALJ erred by failing to accept the consultative psychologist's opinion that Plaintiff had "marked" limitations in dealing with other people and in dealing with stress.   Plaintiff maintains that the ALJ was required to accept that opinion, since it was the only medical opinion in the record concerning that issue, and that the ALJ therefore erred in finding that Plaintiff had only "moderate" limitations in those functions.   The Court again disagrees.

---

[19] See, e.g., Administrative Record at p. 767 (Hospital noted dated August 14, 2017, normal physical exam).
[20] Administrative Transcript at p. 721.
[21] Administrative Transcript at p. 682.
[22] Administrative Transcript at p.721.   As the ALJ observed, notes from the office visit at which the foregoing observations were made reference Plaintiff's positive urine test results for THC and Cocaine and indicate that no narcotic pain medications would be prescribed; further, the note indicates that when offered Gabapentin for pain instead of narcotics, Plaintiff declined the offer. See, Administrative Transcript at p. 722 ("Offered script for gabapentin.   Pt. refused.   Advised I will not prescribe controlled meds for this pain due to hx of drug abuse.").

As a preliminary manner, the Court believes that Plaintiff's emphasis on the word "marked" versus the word "moderate" is misplaced, since even though the consultative psychologist used the word "marked," she also indicated, in the same sentence, that Plaintiff could "adequately" relate with others and "appropriately" deal with stress. Specifically, the consultative psychologist stated: "She can relate adequately with others and appropriately deal with stress with marked limitations."[23]   The Court understands that sentence to mean that Plaintiff can adequately deal with others and appropriately deal with stress despite having marked limitations.   Plaintiff, on the other hand, argues that if Plaintiff has marked limitations, she cannot adequately deal with others or appropriately deal with stress.

In any event, Petitioner insists that the ALJ erred by finding that Plaintiff was only moderately limited in regard to dealing with people and handling stress, when the only medical opinion of record on that issue indicated that Plaintiff had marked limitations in those areas.   However, an ALJ is entitled to make an RFC finding that is consistent with the record as a whole, even if it does not perfectly match a particular medical opinion. *See, Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (Rejecting argument that ALJ had improperly substituted his medical judgment for expert opinion, stating that: "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also, Camille v. Colvin*, 652 F. App'x 25, 29 n. 5 (2d Cir. 2016) ("The ALJ used Dr. Kamin's opinion as the basis for the

---

[23] Administrative Transcript at p. 275.

RFC but incorporated additional limitations based on, inter alia, the testimony of Camille that she credited. An ALJ may accept parts of a doctor's opinion and reject others.") (citations omitted).

Notably, in *Matta* the ALJ had found, as did the ALJ in this case, that the claimant had only "moderate" limitations in social functioning, even though a doctor had opined that the claimant had "marked" limitations in social functioning, and even though no doctor had indicated that the claimant had only moderate limitations. *Matta*, 508 F. App'x at 55-56. However, the Second Circuit indicated that the ALJ had not erred, since the RFC finding was consistent with the record as a whole. *See, id.* at 56 ("Plaintiff asserts that the ALJ substituted his own medical judgment for these expert opinions in concluding that "substantial evidence revealed [plaintiff's] condition stabilized and at the most, he had moderate symptoms."   We disagree. Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Consequently, the issue is not whether the ALJ's findings, that Plaintiff had moderate limitations in relating to others and dealing with stress, correspond to the consultative examiner's report, as Plaintiff contends.   Rather, the question is whether those findings are supported by substantial evidence and are consistent with the record as a whole.   On this point, the ALJ stated that she did not accept the consultative psychologist's opinion that Plaintiff had "marked" limitations in dealing with other people for two reasons: First, the consultative psychologist's own report indicated that Plaintiff's manner of relating and social skills were within normal limits during the examination; and,

14

second, Plaintiff testified at the hearing that she was able to maintain relationships with her

family despite her symptoms. The ALJ further indicated that she did not accept the

consultative psychologist's opinion Plaintiff had "marked" limitations in dealing with stress,

since Plaintiff was able to adequately carry out her activities of daily living despite her

symptoms.   These findings are, in the Court's view, supported by substantial evidence

and consistent with the record as a whole.

    <u>The ALJ Did Not Improperly Rely on a</u>
    <u>Stale Consultative Examiner's Opinion</u>

      Plaintiff further maintains that the ALJ erred by relying on "stale" report from her

consultative physical examination.   As mentioned earlier, Plaintiff contends that the report

was "stale" since it was written prior to bother her neck surgery and her MVA.   In that

regard, reversal may be appropriate where the Commissioner's decision to deny benefits

rests on a consultative opinion that was "stale" because it was rendered on an incomplete

record, particularly where subsequent developments in the medical evidence cast doubt on

the accuracy of the opinion:

> In *Hidalgo v. Bowen*, under the regulations then in effect, the Second Circuit
> rejected an ALJ's decision that relied exclusively on the opinion of a non-examining
> consultant, in part because the non-examining physician reviewed a limited record
> that did not include subsequent clinical findings, such as clinical notes of a treating
> physician and hospital records including X-rays. 822 F.2d 294, 295–96, 298 (2d Cir.
> 1987). Because this subsequent evidence "confirmed" the RFC determination of the
> primary treating physician and "may have altered [the non-examining consultant's]
> conclusions," the Second Circuit remanded to the ALJ. *Id.* at 298. But in *Camille v.
> Colvin*, the Second Circuit reached the opposite conclusion in a non-precedential
> opinion, rejecting an argument that a non-examining source was "stale" solely
> because a non-examining source did not review later submitted evidence where
> "th[at] additional evidence does not raise doubts as to the reliability of [the non-
> examining source's] opinion." 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (distinguishing

15

> *Hidalgo*, 822 F.2d at 295–96, 298) ). In that case, because the later opinion
> evidence did not differ materially from the opinions that the non-examining physician
> did consider, the Second Circuit found that the ALJ committed no error by relying on
> the non-examining physician. *Id.*

*West v. Berryhill*, No. 3:17-CV-1997 (MPS), 2019 WL 211138, at *5 (D. Conn. Jan. 16,

2019) (footnote omitted).    Reversal may be particularly appropriate where the

Commissioner relied heavily on the stale opinion in formulating the claimant's RFC, and no

other medical opinion supports the RFC. *See, Id.* at *6 ("Because the ALJ placed 'great

weight' on Dr. Kuslis' [stale] opinion in formulating the RFC, and because no other medical

opinion cited by the ALJ fully supported the RFC, remand is warranted.").

      Here, although the consultative report at issue was written prior to Plaintiff's surgery

and MVA, it was not stale because, contrary to what Plaintiff maintains, there is substantial

evidence (normal clinical findings) to support the ALJ's determination that Plaintiff's

condition did not worsen following the consultative exam.    Moreover, the problems that

Plaintiff complained about at the consultative examination were the same problems that

she complained about following the MVA, namely, neck and back pain. For example, the

consultative examiner reported: "She continues to have low back pain which is 8 out of 10

intensity.  . . .    She states her neck pain is also 8 out of 10 intensity."[24]    Consequently

the Court finds that the ALJ did not err by relying on the challenged consultative report.

      <u>The ALJ Did Not Err by Failing to Evaluate the Nature of Plaintiff's Stress</u>

      Plaintiff lastly contends that Social Security Ruling ("SSR") 85-15 required the ALJ

to evaluate the nature of Plaintiff's stress when making an RFC determination.    Plaintiff

---

[24] Administrative Transcript at p. 277.

argues that the ALJ failed to do so, and improperly accounted for Plaintiff's stress by merely limiting her to simple low stress work.   However, that argument lacks merit since SSR 85-15 does not apply in cases such as this where the claimant has both physical and mental impairments. *See, e.g., Estrella v. Berryhill*, No. 17-CV-3838(AMD), 2019 WL 1367757, at *3 (E.D.N.Y. Mar. 26, 2019) ("This regulation does not apply to this case, because the plaintiff suffers from both exertional and nonexertional limitations; SSR 85-15 applies only to claimants with solely nonexertional limitations. *See Roma v. Astrue*, 468 F. App'x 16, 20 (2d Cir. 2012)[.]").   In any event, the ALJ considered Plaintiff's stress and properly accounted for it in the RFC finding by limiting Plaintiff to "simple and routine tasks and a low stress environment defined as no more than occasional contact with coworkers, supervisors and no contact with the public and only occasional decisionmaking."

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is denied, Defendant's cross-motion (ECF No. 13) for the same relief is granted, and this matter is dismissed.   The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
       August 31, 2020

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge